**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MARCUS HACKETT, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-1817 |
| | § | |
| UNITED PARCEL SERVICE, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION & ORDER

Pending before the court are (1) defendant United Parcel Service's ("UPS") motion for summary judgment (Dkt. 15), (2) UPS's objections and partial motion to strike the plaintiff's summary judgment evidence and factual allegations (Dkt. 19), and (3) plaintiff Marcus Hackett's motion for leave to file a second amended complaint (Dkt. 23). After considering the motions, objections, responses, replies, the evidentiary record, and the applicable law, the court is of the opinion that (1) UPS's motion for summary judgment (Dkt. 15) should be GRANTED, (2) UPS's objections and partial motion to strike the plaintiff's summary judgment evidence and factual allegations (Dkt. 19) should be SUSTAINED IN PART and OVERRULED IN PART, and (3) Hackett's motion for leave to file a second amended complaint (Dkt. 23) should be DENIED.

## II. BACKGROUND

This is a case about alleged employment discrimination, retaliation, and a hostile work environment. Dkt. 9. Hackett alleges that his employer, UPS, discriminated against him based on his race (black), national origin (Trinidadian), and age (53), and placed him in a hostile work environment. Dkt. 9 at 5. Hackett also alleges he was retaliated against based on complaints to Human Resources and the Equal Opportunity Employment Commission ("EEOC") about

discrimination.  *Id.*  Hackett asserts causes of action under (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, for race, age, and national origin discrimination, (2) the Civil Rights Act of 1866, 42. U.S.C. § 1981, for race discrimination and national origin discrimination, and (3) the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, 634, for age discrimination.[1]  *Id.* at 5.

## A.      Hackett's Employment History

Hackett began working for UPS in January 1985 as a part-time Center Clerk.  Dkt. 15, Ex. 2 at 6.  In January 1990, Hackett was promoted to his first supervisory position, Accounting Supervisor.  *Id.*  From July 2003 to January 2012, Hackett worked as a Security Supervisor.  *Id.*  While Hackett was in the Security Department, Uyless Gary was the Division Security Manager and Tommy Nuemann was a local Security Manager.  Dkt. 15, Ex. 3 (Watson Dec.) at 2.  In January 2012, Hackett was transferred out of the Security Department and became an On-Road Supervisor at UPS's Stafford Facility.  Dkt. 15, Ex. 1 (Hackett Dep.) at 6.

When he began as an On-Road Supervisor, Hackett was supervised by then-Package Division Manager Danny Moss.  *Id.* at 8.  After Moss retired sometime in late 2012 or early 2013, Business Manager Wauker Miller became Hackett's supervisor.  *Id.* at 28.  In mid-2013, Miller was assigned to work on a special project.  *Id.*, Ex. 3 at 3, Ex. 4.  Hackett alleges that District Operations Manager

---

[1] Hackett's first amended complaint combines the race, national origin, and age discrimination cause of action under all three statutes, Title VII, section 1981, and the ADEA. Dkt. 9.  However, section 1981 does not allow a cause of action for age discrimination or discrimination based "solely on the place or nation of . . . origin." *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613, 107 S.Ct. 2022 (1987).  The Supreme Court acknowledges that in certain circumstances, a national origin claim can be cognizable under section 1981.  *Id.*  For the present motion only, UPS assumes that Hackett's national origin claim is cognizable under 1981.  Dkt. 15 at 19 n.2.  Likewise, the ADEA only allows for a cause of action for age discrimination. 29 U.S.C. §§ 621, 634.

Waring Lester told Hackett that he would be "in charge" in Miller's absence. Dkt. 15, Ex. 1 at 29. UPS disputes that Hackett was ever officially assigned as the Acting Manager. Dkt. 15, Ex. 3 at 3. On November 21, 2013, Ray Ribelin was officially designated as Acting Manager in Miller's place. *Id*. Ribelin had previously served as a Business Manager between 2003 and 2013, and UPS claims that it assigned Ribelin to fill in for Miller because it wanted an Acting Manger who was experienced with the peak season. *Id*.; Dkt. 15, Ex. 5. On the same day, Hackett requested and received a six-month leave of absence because he claims that he was upset by Ribelin's assignment and unable to work. Dkt. 15, Ex. 1 at 31; Ex. 3 at 3.

In May 2014, Hackett returned from his leave of absence. Dkt. 15, Ex. 1 at 6–7, Ex. 3 at 3. He worked briefly as an On-Road Supervisor and then he was assigned to the Baytown Center as a Preload Supervisor. Dkt. 15, Ex. 1 at 6–7. Hackett's 2014 Career Development Plan was not updated during his leave. *Id*., Ex. 3 at 3. Hackett's 2013 Career Development Plan under Miller rated him as "still developing" with respect to his readiness for promotion. Dkt. 15, Ex. 7.

In November 2014, Kim Richards, who is black, female, and aged 38, with a Bachelor's degree in Finance and a Master's Degree in Business Administration ("MBA"), was promoted from an On-Road Supervisor to Business Manager at the Baytown Center.[2] Dkt. 15, Ex. 3. Richards's 2014 Career Development Plan rated her as "ready now" for promotion. Dkt. 15, Ex. 9 at 3. Hackett reported to Richards for six to eight months after her promotion. Dkt. 15, Ex. 1 at 7. On June 17, 2015, Hackett took a three-month leave of absence. Dkt. 15, Ex. 2.

---

[2] Hackett's amended complaint describes Richards as "a young woman in her late 20's without any college education." Dkt. 9 at 4. However, Hackett does not provide any summary judgment evidence in support of this conclusory allegation. Dkt. 15, Ex. 1 at 20.

After his leave of absense, Hackett returned to his previous position as Preload Supervisor at the Baytown Center. *Id*. Hackett's 2015 Career Development Plan under his new manger Michael Staes included a "fully acceptable" rating, and he was rated "ready now" for promotion. Dkt. 15, Ex. 12.

## B. Alleged Discriminatory, Retaliatory, or Harassing Incidents

### 1. Security Department (2008 through 2012)

Hackett alleges that the harassment began in 2008, when a colleague, Craig Patterson, made fun of his accent, and Neumann, his supervisor, told Hackett that he would never be promoted because of his accent. Dkt. 15, Ex. 1 at 10. In September 2011, Hackett alleges that his then-supervisor, Gary, falsely accused Hackett of stealing money out of a drug box. Dkt. 15, Ex. 1 at 11–13. Hackett reported the incident to Lester, who was Gary's office manager, and alleged that Gary was irate during the meeting. *Id*. Also, in January 2012, Hackett alleges that Gary falsely accused him of calling a help line and lying about an issue with Neumann's expense accounts. *Id*. Hackett reported this incident to Lester as well. *Id*. At the end of January 2012, Hackett was transferred out of the Security Department. *Id.* at 11.

### 2. On-Road Supervisor / Pre-load Supervisor (2012 to Present)

On October 17, 2012, Hackett alleges that Moss, his then-manager, read him the Bible verse "slaves must obey their masters." *Id*. at 8. Hackett reported the incident to Human Resources. *Id*. at 9.

Sometime in 2013, Hackett alleges that, Miller, his then-supervisor, made a laughing comment "you, Hackett, a deacon?" *Id*. at 28–29. Additionally, Hackett alleges that Miller scheduled him to work late "two or three times" on nights when he had to leave early for deacon meetings. *Id*. Also, in 2014, Hackett alleges that a colleague, Mark Tutt, instructed coworkers to

take pictures of Hackett because he believed that Hackett was sleeping on the job.  *Id*. at 17; Dkt. 17-3 (Hackett Dep.) at 21.

On November 21, 2013, Hackett alleges he was subject to an a "demotion" when Ribelin was assigned to the Acting Manager position.  Dkt. 17 at 16.  Then, Hackett claims that he was wrongfully passed over for promotion in favor of Richards on November 3, 2014.  Dkt. 17 at 17–18.

In 2015, Hackett alleges that while Richards supervised him, she treated him badly, including believing another employee who claimed Hackett was sleeping on the job, threatening Hackett, asking him for write-ups for conditions beyond his control, and giving him extended assignments.[3] Dkt. 15, Ex. 1 at 19–20, Ex. 10.  Hackett testified that he reported Richards's conduct to her supervisor, John Gatewood.  Dkt. 15, Ex. 1 at 20.

## C.    Procedural History

On February 27, 2014, during his six-month leave of absence, Hackett filed a charge of discrimination against UPS with the EEOC.  Dkt. 15, Ex. 6  On April 21, 2015, Hackett amended his EEOC charge of discrimination to complain of Richards's promotion over him.  Dkt. 15, Ex. 11. On March 25, 2016, the EEOC dismissed Hackett's claims of discrimination and issued a notice of his right to sue.  Dkt. 15, Ex. 13.

On June 23, 2016, Hackett filed his original complaint against UPS alleging discrimination and a hostile work environment based on age, race, national origin, and religion, and alleging retaliation.  Dkt. 1.  On September 16, 2016, UPS filed a partial motion to dismiss for failure to state a claim (Dkt. 6) and its answer (Dkt. 7).  On October 7, 2016, Hackett filed his first amended complaint, dropping his religious discrimination complaint.  Dkt. 9.  On October 20, 2016, UPS filed

---

[3] UPS explains that "write-ups are used at UPS to explain an event that happened or how a situation could be handled better or differently."  Dkt. 15 at 13 n.3.

its answer to Hackett's amended complaint. Dkt. 12. On December 20, 2016, the court granted UPS's motion to dismiss retaliation claims for events that occurred before May 2013 based on statute of limitations under Title VII and the ADEA, including Hackett's transfer out of the Security Department, and dismissed any punitive damages and pain and suffering damages under the ADEA. Dkt. 13.

On March 24, 2017, UPS filed a motion for summary judgment on Hackett's remaining claims. Dkt. 15. Hacket responded, and UPS replied. Dkts. 17, 18. On April 24, 2017, UPS filed a motion to strike certain summary judgment evidence offered by Hackett. Dkt. 19. Hackett responded, and UPS replied. Dkts. 20, 21. On July 24, 2017, Hackett filed a motion for leave to file a second amended complaint to introduce allegations of retaliation that occurred after UPS filed its motion for summary judgment. Dkt. 24. UPS responded. Dkt. 25.

## II. OBJECTIONS AND PARTIAL MOTION TO STRIKE

UPS objects to portions of Hackett's affidavit and the court's consideration of factual statements in Hackett's response brief that are unsupported by record evidence. Dkt. 19. The court will address each objection in turn.

### A.     Hackett's Affidavit

#### 1. Irrelevant Evidence

First, UPS objects to the portions of Hackett's affidavit that reference incidents while Hackett was working in the Security Department as irrelevant or time-barred with respect to Hackett's remaining causes of action. Dkt. 19 (citing Dkt. 17-2 at 1–2). The court dismissed Hackett's retaliation claim based on his transfer out of the Security Department in 2012 under the ADEA and Title VII. Dkt. 13 at 2–3. The court will not consider any evidence in support of dismissed claims. To that extent, UPS's objection is SUSTAINED IN PART.

However, Hackett asserts a theory of "continuing violations" with respect to the incidents before 2012 and his surviving current claims. Dkt. 17 at 6. For the court to consider this argument, evidence of incidents that occurred prior to 2012 are relevant to determine if they represent "continuing violations." Therefore, to that extent, UPS's objection is OVERRULED IN PART.

Second, UPS objects to the evidence associated with a manager reading a Bible verse that "slaves must obey their masters" as irrelevant to the present claims. Dkt. 19 (citing Dkt. 17-2 at 2). Hackett's first amended complaint does not contain religious discrimination claims. Dkts. 9; 20 at 2. However, the court finds that a Bible verse about slaves also implicates racial discrimination concerns. Therefore, to the extent that this evidence is in support of a religious discrimination claim, UPS's objection is SUSTAINED. To the extent that this is evidence in support of a racial discrimination claim, UPS's objection is OVERRULED.

### 2. Hackett's Personal Knowledge of Ribelin

UPS objects to Hackett's affidavit testimony regarding Ribelin's race ("Caucasian") and his employment history (a demotion due to "allegedly falsifying company documents"). Dkt. 19 at 3 (citing Dkt. 17-2 at 2). UPS argues that Hackett lacks the personal knowledge to testify to either of these items. *Id*. Hackett testified in his deposition that he knew "nothing" about Ribelin's background and "[n]ever since met him a day in my life." Dkt. 17-3 at 40. In response to UPS's objection, Hackett suggests that the court should look up Ribelin's photograph on Facebook or assume that Hackett can testify to Ribelin's race because "the undersigned [attorney] has never met President Obama but is fairly confident she can describe his skin color." Dkt. 20 at 3. It is the parties' responsibility to gather facts and evidence and present them to the court. The court may not engage in its own discovery.

An affidavit used as summary judgment evidence may only be made based on personal knowledge. Fed. R. Civ. P. 54(c)(4). Hackett did not state the basis for his personal knowledge regarding Ribelin's race or employment history. Dkt. 17-2 at 2. Hackett does not offer any other evidence regarding his personal knowledge of Ribelin's race or employment history in response to UPS's objection. Dkt. 20. Therefore, UPS's objection is SUSTAINED.

### 3. Sham Affidavit

UPS objects to elements of Hackett's affidavit that contradict his deposition testimony. Dkt. 19 at 4. A sham affidavit or declaration is basically an affidavit or declaration that contradicts prior deposition testimony. *See Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000); *Axxiom Mfg., Inc. v. McCoy Invs., Inc.*, 846 F. Supp. 2d 732, 749 (S.D. Tex. 2012) (Rosenthal, J.). Under the sham affidavit rule, a party may not "'manufacture a dispute of fact merely to defeat a motion for summary judgment.'" *Axxiom Mfg.*, 846 F. Supp. 2d at 749 (quoting *EBC, Inc. v. Clark Bldg. Sys. Inc.*, 618 F.3d 253, 269 (3d Cir. 2010)). The Fifth Circuit has reasoned:

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit [or declaration] contradicting his [or her] own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

*Doe*, 220 F.3d at 386 (quoting *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)). That being said, an affidavit or declaration that contradicts prior testimony "should not be automatically disregarded." *Axxiom Mfg.*, 846 F. Supp. 2d at 750. Instead, the court must determine if there are sufficient reasons given for the change in testimony, if the proposed change in testimony reflects the original testimony, and whether "'other circumstances satisfy the court that amendment should be permitted.'" *Id.* (quoting *EBC, Inc.*, 618 F.3d at 270). Courts must apply the sham

affidavit rule "'sparingly'" as it could have a "'harsh effect'" on a party's case. *Id.* (quoting *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010)).

First, UPS objects to Hackett's affidavit's description of the extent of the training that Hackett gave Richards. Dkt. 19 at 2. In his affidavit, Hackett states that he trained Richards on "claims analysis, driver follow-ups and dishonest employees as well as gathering evidence, procedures, and the interview process." Dkt. 17-2 at 2. Whereas, in his deposition, Hackett testified that he was involved "a little" in training Richards, "in claims" and "how the [claims] process works." Dkt. 17-3 at 41–42. He also testified in his deposition that any training he gave Richards was a one-time occurrence when they were both in the Accounting Department in the "early 2000s." Dkt. 15, Ex. 1 at 25; Dkt. 17-3 at 41–42. Hackett does not offer any explanation for why his affidavit implies that he gave Richards more substantial training than he described in the deposition. Dkt. 20 at 3. To the extent that the affidavit and deposition offer conflicting accounts of the training that Hackett gave Richards, UPS's objection is SUSTAINED.

Second, UPS objects to Hackett's statement in his affidavit that Gatewood "never discussed my interactions with Ms. Richards with me." Dkt. 19 at 5 (quoting Dkt. 17-2 at 3). In Hackett's deposition, he admitted that he talked to Gatewood about his interactions with Richards "two or three [times] possibly." Dkt. 17-3 at 25. Hackett does not respond to this objection or offer any reason for the changed testimony. Dkt. 20. Under the Local Rules of the Southern District of Texas, "[f]ailure to respond will be taken as a representation of no opposition." S.D. Tex. Loc. R. 7.4. UPS's objection is SUSTAINED.

## B. Statements in Response Brief

UPS objects to four factual statements in Hackett's response brief that it alleges are unsupported by record evidence, not within Hackett's personal knowledge, or directly contradicted

by Hackett's deposition testimony. Dkt. 19 at 6. Hackett's only response to these objections is that he "is confident this Court can determine what material facts are supported by evidence and which are not and which argument Defendant makes that are not legitimate." Dkt. 20 at 3. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010) (quoting *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)). Therefore, the court will only consider the summary judgment evidence cited by Hackett in his response. Dkt. 20.

First, UPS objects to the statement that "Hackett had complained of discrimination by Miller." Dkt. 19 at 6 (citing Dkt. 17 at 5). Hackett cites to his deposition as summary judgment evidence in support of this. Dkt. 17 at 5 (citing 17-3 at 39). The cited deposition testimony contains the question "Did you complain to anybody about Mr. Miller's conduct?" Dkt. 17-3 at 39. Hackett answered "no." *Id.* The court finds that Hackett did not provide summary judgment evidence to support his statement. UPS's objection is SUSTAINED.

Second, UPS objects to Hackett's claim that Lester instructed Richards to scream at him, threaten him, and ask for write ups. Dkt. 19 at 6 (citing Dkt. 17 at 5–6, 18). UPS argues that this is an unsubstantiated allegation. Hackett stated in his deposition that Richards's direction came from "Warren Lester, in my most humble opinion." Dkt. 17-3 at 26. Hackett offered no evidence for the foundation of this belief except for Lester's knowledge of Hackett's EEOC complaints. *Id.* Because this statement is merely a conclusory allegation, the court will not consider it. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) ("[C]onclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation" do not

allow a non-movant to avoid summary judgment.); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  UPS's objection is SUSTAINED.

Third, UPS objects to statements contained within Hackett's allegation that he was passed up for promotion in 2012 when Neumann promoted Josh Basera and in 2015 when George Davilla and Brandon Crawford were promoted.  Dkt. 19 at 6–7 (citing Dkt. 17 at 14–15).  Hackett testified in his deposition that Basera is younger than he is, that he trained Basera, and otherwise that he knows nothing about Basera's qualifications.  Dkt. 17-3 at 27.  Hackett testified in his deposition that Davilla is younger than he is, but he did not know how much younger or if he was under 40.  *Id*. at 37.  Hackett testified that Crawford is younger than he is, but he did not know how young or if he was under 40, and that he did not know anything about Crawford's prior work experience other than that he had been on probation. Dkt. 17-3 at 34.  The court finds that it is fair to infer that Hackett has some personal knowledge about his colleagues' ages.  With respect to Basera, Hackett alleging that he trained Basera is certainly based on his personal knowledge.  However, the court cannot infer that Hackett has personal knowledge regarding Crawford's disciplinary history when he did not testify to the basis of that knowledge.[4]  Dkt. 17-13 at 34.  Therefore, UPS's objection is OVERRULED IN PART and SUSTAINED IN PART.

Fourth, UPS objects to Hackett's assertion that Jay Turner, a white male, was promoted over Hackett despite their disparate experiences.  Dkt. 19 at 7 (citing Dkt. 17 at 18).  Hackett testified about Turner's previous work assignments at UPS, the difference in their years of experience at UPS,

---

[4] Hackett's response states that he "previously supervised" Crawford.  Dkt. 17 at 15.  However, Hackett's deposition testimony states that in the late 1990s or early 2000s he "indirectly" supervised Crawford because Hackett supervised the "claim reduction process *with* [Crawford] and the high value process *with* [Crawford]."  Dkt. 17-3 at 34 (emphasis added).  The court finds this testimony alone is not sufficient for the court to infer that Hackett would have personal knowledge of Crawford's disciplinary history.

and Hackett alleges that he was qualified for the job that Turner filled. Dkt. 17-3 at 37. However, Hackett also testified that he did not know Turner's outside qualifications or educational background. *Id*. Again, the court finds it fair to infer that Hackett has sufficient personal knowledge of the relative length of his colleague's tenure at UPS. Therefore, Hackett's statement that "Jay Turner, a white male, is promoted over Hackett even though Hackett has worked at UPS longer" is sufficiently supported by his deposition testimony. *Id*. Hackett does not attempt to offer any argument regarding Turner's education or previous work experience, about which he demonstrated no personal knowledge. *Id.;* Dkt. 17 at 18. UPS's objection is OVERRULED.[5]

### III. MOTION FOR SUMMARY JUDGMENT

### A.    Legal Standard

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant

---

[5] With respect to the inclusion of information regarding Basera, Davilla, Crawford and Turner's promotions in Hackett's response brief, the court observes that Hackett is not alleging a cause of action that any of these four men were promoted in lieu of him for discriminatory or retaliatory reasons. Dkt. 9. It is possible, though not clear, that Hackett is asserting that these four men are "similarly situated" should the court need to consider that element of Hackett's prima facie case.

and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dall., Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

**B.     Analysis**

UPS argues that it is entitled to summary judgment because (1) Hackett's claims are barred by the statute of limitations, and (2) Hackett has not established a dispute of material fact regarding the elements required to prove a hostile work environment, discrimination, or retaliation. Dkt. 15. The court will first address the statute of limitations issue and then address each of Hackett's causes of action in turn.

**1.     Statute of Limitations**

UPS argues that two of Hackett's claims are barred under the statute of limitations: (1) Hackett's religion, race, and national origin discrimination and retaliation causes of action under section 1981 for incidents that occurred during his time in the Security Department, and (2) Hackett's hostile work environment claim. Dkt. 16 at 15–16; 18–19. As an initial matter, Hackett confirms that his amended complaint does not assert a cause of action based on religious discrimination or retaliation, so the court need not address UPS's arguments regarding religious discrimination. Dkt. 9; Dkt. 17 at 7.

**a.  Discrimination and Retaliation under Section 1981**

Claims that arise from the 1991 amendment to section 1981 are subject to a four-year "catch-all" statute of limitations. *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 341 (5th Cir. 2005) (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 124 S.Ct. 1836 (2004)).[6] Hackett filed his original complaint on June 23, 2016. Dkt. 1. Therefore, UPS argues, any incidents during Hackett's time in

---

[6] Hackett does not dispute that the four-year statute of limitations is applicable. Dkt. 17 at 6.

the Security Department, which came to an end more than four years prior to this law suit, on January 12, 2012, are barred based on the statute of limitations. Dkt. 15 at 16. Specifically, UPS challenges Hackett's allegations that (1) the hostile work environment began on June 30, 2008; (2) Neumann, a security manager, told Hackett that he would never be promoted because of his accent in 2011; and (3) Hackett was transferred out of the Security Department because of his complaints in January 12, 2012. Dkt. 15 at 16 (citing Dkt. 9 at 4).

Hackett responds that these older incidents remain part of his current cause of action under the continuing violations doctrine. Dkt. 17 at 6. "Under the continuing violations doctrine, a plaintiff may complain of otherwise time-barred discriminatory acts if it can be shown that the discrimination manifested itself over time, rather than in a series of discrete acts." *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061 (2002).

To the extent that Hackett is arguing that his January 2012 transfer is an adverse employment action with respect to his section 1981 retaliation and discrimination claims, the court concludes that the transfer is a discrete act. *Id.* (describing "easy to identify" discrete acts, including "termination, failure to promote, denial of transfer, or refusal to hire."). For the same reasons that the court already dismissed the Title VII and the ADEA claims based on the January 12, 2012 transfer (Dkt. 13 at 3), the court also finds that the section 1981 retaliation and discrimination claims relating to this event are barred by statute of limitations. UPS's motion for summary judgment on Hackett's claim for discrimination and retaliation associated with his January 2012 transfer out of the Security Department is GRANTED.

With respect to the remaining pre-2012 incidents, out of convenience, the court will consider them in the context Hackett's causes of action for discrimination and retaliation when appropriate under the continuing violations doctrine.

### b. Hostile Work Environment and Statute of Limitations

UPS argues that Hackett's claim of a hostile work environment under Title VII, section 1981, and the ADEA is also not viable based on the statute of limitations because all Hackett's evidence of hostility ends in January 2012. Dkt. 15 at 18 (citing Ex. 14 (Hackett Interrog.)). With respect to a hostile work environment claim, the discrete act analysis is not conclusive. *Morgan*, 536 U.S. at 113 ("[Hostile work environment claim's] very nature involves repeated conduct"). Thus, a court may consider "the entire scope of the hostile work environment claim . . . so long as any act contributing to that hostile environment takes place within the statutory time period." *Id.* at 105. However, this doctrine is limited—Hackett must demonstrate the "separate acts" are related, or the continuing single violation claim cannot be used to encompass the earlier acts. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009). "[T]he continuing violation theory requires the same type of discriminatory acts to occur both inside and outside the limitations period." *Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 913 (5th Cir. 2000).

Hackett admits that "many" of the incidents in support of his hostile environment claim occurred outside the statutory limitations period, but he argues that at least some hostility occured inside the limitations period. Dkt. 17 at 9. Within the limitations period, Hackett alleges that (1) in 2012, Moss, Hackett's then-manager, read the Bible verse "slaves obey their masters" (Dkt. 17-3. at 11); (2) in 2013, Miller, Hackett's then-manager, laughed and said "you, Hackett, a deacon?" and also asked him to work late on nights that he had to leave early for deacon meetings (*id*.); (3) in 2014, Tutt, a colleague, accused Hackett of sleeping on the job and asked coworkers to photograph him (*id*.

at 20); and (4) in 2015, Richards, his manager, screamed at him, asked him for allegedly undeserved write-ups, and gave him extended assignments (*id.* at 24–25). Dkt. 17 at 10. Rather than attempting to divvy up the pre-2012 incidents based on whether they are the same "type" as the post-2012 incidents, the court will consider the alleged comments collectively by addressing UPS's argument that the comments do not rise to the to the level necessary to establish a prima facie case of a hostile work environment. Dkt. 15 at 19.

### 2. Hostile Work Environment

UPS argues that Hackett's hostile work environment claims should be dismissed because the combinations of the incidents that he alleges do not establish a prima facie case of a hostile work environment. Dkt. 15 at 18.

To establish a prima facie case for a hostile work environment, Hackett must show that: (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take adequate remedial action. *Ogden v. Brennan*, 657 F. App'x 232, 236 (5th Cir. 2016) (ADEA); *Mendoza v. Helicopter*, 548 F. App'x 127, 128 (5th Cir. 2013) (section 1981); *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (Title VII); *see also Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011) (recognizing "claims of hostile work environment on the basis of age" may arise under ADEA). The work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S. Ct. 2275 (1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367 (1993)).

For harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hernandez*, 670 F.3d at 651 (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). In determining whether an abusive work environment exists, a court must assess the totality of the circumstances, including: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23; *Alaniz v. Zamora–Quezada*, 591 F.3d 761, 771 (5th Cir. 2009). In considering the factors, "[n]o single factor is determinative." *EEOC v. WC & M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). Simple teasing, rude or offensive comments, or isolated incidents will not amount to actionable discrimination. *Harris*, 510 U.S. at 21; *Hockman v. Westward Commc'ns, L.L.C.*, 407 F.3d 317, 326 (5th Cir. 2004). Conclusory allegations of a hostile work environment will not suffice. *Bryan v. Chertoff*, 217 F. App'x 289, 294 (5th Cir. 2007).

Hackett cites the following alleged incidents as the basis for his hostile work environment claim: (1) In 2008, Patterson, a colleague, made fun of Hackett's accent (Dkt. 17-3 (Hackett Dep.) at 13); (2) In 2011, Nuemann, a security manager, told him that Hackett that he would never be promoted because of his accent (*id..*); (3) In 2011, Gary, a manager, made an "irate" accusation that Hackett stole from a drug box (Dkt. 15-14 at 5); (3) In 2012, Gary falsely accused Hackett of calling a company help line to report that Neumann falsified his expense account (Dkt. 17-3 at 16); (4) In 2012, Moss, Hackett's then-manager, read the Bible verse "slaves must obey their masters," (*id.* at 11); (5) In 2013, Miller, Hackett's then-manager, laughed and said "you, Hackett, a deacon?" and also scheduled him to work late on nights that he had to leave early for deacon meetings (*id.*); (6) In 2014, Tutt, a colleague, accused Hackett of sleeping on the job and asked coworkers to photograph him (*id.*

at 20); and (7) In 2015, Richards, his manager, screamed at him, asked him for allegedly undeserved write-ups, and gave him extended assignments (*id.* at 24–25; Dkt. 15, Ex. 10).

Hackett argues that the incidents establish a prima facie case for a hostile work environment based on his status as a black, Trinidadian male over the age of 40. Dkt. 17 at 10. UPS argues that these incidents do not rise to the level of "severe and pervasive" required for a hostile work environment. Dkt. 15 at 18–19. The court will first address which of these incidents even support the element of a prima facie case that "the harassment was based on [Hackett's] membership in the protected class," and then turn to whether any surviving incidents rise to the level of severe and pervasive.

The court views these incidents in a light most favorable to Hackett as the non-movement and accepts Hackett's argument that he was accused of stealing in 2011 by Gary because of his race. Dkt. 17 at 9. Also when viewed in the light most favorable to Hackett, the court can infer Moss's 2012 reading of the Bible verse about slaves could have been directed at Hackett's race. *Id.*

With respect to the 2008 and 2011 comments about Hackett's accent, the court must return to the continuing violations doctrine. Dkt. 15 at 8. Hackett does not allege any incidents directed toward his accent or national origin after 2011. Dkt. 17. Therefore, Hackett does not offer an incident of the same "type" of harassment directed toward his national origin inside the limitations period. *Id.* The court finds that comments about Hackett's accent from outside the statute of limitations period are time-barred. *Martineau*, 203 F.3d at 913.

With respect to the remaining alleged incidents, the court finds that they have no connection to his protected status. First, Miller's comments and behavior regarding Hackett's status as a deacon are directed at his religion, and Hackett does not allege religious discrimination. Dkt. 17 at 7. Further, to the extent that Hackett alleges Miller's comment was directed to Hackett's protected

status, it was a single laughing comment, and mere teasing is insufficient for a hostile work environment claim. *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007) ("Title VII . . . is not a general civility code, and simple teasing [and] offhand comments . . . will not amount to discriminatory changes in the terms and conditions of employment." (internal quotations omitted)).

Second, with respect to Tutt's actions, Hackett testified that he was not accusing Tutt of targeting his national origin or his race, but he rather believed Tutt's actions were the result of animus from a demotion investigation from 2005 or 2006. Dkt. 17-3 at 23. Third, with respect to Richards's actions, Hackett testified that he did not believe that Richards's conduct was motivated by Hackett's national origin, race, or age. *Id*. at 24. Further, Hackett testified that the content of Richards's "yelling" was work-related issues. *Id*.; *see McElroy v. PHM Corp*., 622 F. App'x 388, 390 (5th Cir. 2015); *Kummerle v. EMJ Corp*., 538 F. App'x 373, 374 (5th Cir. 2013) ("Offensive and unprofessional behavior" alone does not violate Title VII.).

In summary, when viewed in the light most favorable to Hackett, he only provided four incidents directed toward his membership in a protected class—two incidents directed at his national origin in 2008 and 2011 which are time-barred and two incidents directed toward his race in 2011 and 2012. Hackett offered no evidence of incidents directed toward his age. The four isolated incidents, ending in 2012, are too remote in time and do not rise above the status of offensive utterances to establish that the alleged harassment was "severe or pervasive." *Hernandez*, 670 F.3d at 651. Therefore, UPS's motion to dismiss Hackett's hostile work environment claim is GRANTED.

### 3.    Discrimination

Hackett alleges that he was discriminated against on the basis of race, national origin, and age in violation of Title VII, section 1981, and the ADEA. Dkt. 9 at 4. Hackett alleges that (1) he was

demoted in November 2013 because of race and national origin discrimination, and (2) he was passed over for a promotion in 2014 because of age discrimination. *Id*.

### a. Legal Standard

Title VII makes it unlawful for an employer to "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 states "[a]ll persons . . . shall have the same right[s] . . . as enjoyed by white citizens." 42 U.S.C. § 1981(a). The ADEA similarly makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1).

When Title VII discrimination claims are based on circumstantial evidence, like in Hackett's case, courts apply the *McDonnell Douglas* burden-shifting framework. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "[C]laims . . . brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII." *Mendoza*, 548 F. App'x at 128 (quoting *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir.1996)). Likewise, the burden-shifting framework is also applied to age discrimination complaints under the ADEA. *Jackson*, 602 F.3d at 378.

First, under the burden-shifting framework, a plaintiff must present a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. To establish a prima facie discrimination case, Hackett must show that he (1) is a protected class member, (2) was qualified for his position, (3) suffered an adverse employment action, and (4) that others similarly situated were treated more favorably. *Okoye v. Univ. of Tex. Hou. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)).

To establish a prima facie case for non-selection case under the ADEA, Hackett must show that "(1) he was in the protected class; (2) he was qualified for the position sought; (3) he was not selected; and (4) he was either (a) replaced by another person outside of the protected class; (b) replaced by someone younger; or (c) otherwise not selected because of age." *McClaren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 462 (5th Cir. 2005).

If the plaintiff is successful in presenting a prima facie case of discrimination, the burden of production shifts to the employer to "rebut a presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir.2001)). "[If] the employer meets its burden, then [the burden] shifts back to the plaintiff to present substantial evidence that the employer's reason was pretext for discrimination." *Id.* "If the plaintiff can show that the proffered explanation is merely pretextual, that showing, when coupled with the prima facie case, will usually be sufficient to survive summary judgment." *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–48, 120 S.Ct. 2097 (2000)).

The appropriateness of summary judgment depends on "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Reeves*, 530 U.S. at 148–49). An employee's subjective belief of discrimination alone is not sufficient to warrant judicial relief. *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 139 (5th Cir. 1996) (holding that conclusory allegations, unsubstantiated assertions, and subjective beliefs are insufficient to support discrimination claim).

### b. 2013 Demotion

Hackett alleges that he was subject to race and national origin discrimination when he was removed from his position as an Acting Manager and replaced by Ribelin in November 2013. Dkt. 17 at 4. UPS argues that it is entitled to summary judgment on this claim because (1) Hackett has not met his burden to establish that he suffered an adverse employment action, and (2) Hackett has not rebutted UPS's evidence that it had a legitimate non-discriminatory reason for hiring Ribelin. Dkt. 15 at 21–22.

First, to establish a prima facie case of discrimination, Hackett must show he suffered an adverse employment action. "Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000). Here, Hackett argues that he suffered a demotion when he lost his responsibilities as an Acting Manager because UPS replaced him with Ribelin in November 2013. Dkt. 17 at 11.

The Fifth Circuit has recognized that "diminished material responsibilities" can constitute an adverse employment action. *Schirle v. Sokudo USA, L.L.C.*, 484 F. App'x 893, 898 (5th Cir. 2012). However, the "mere loss of some job responsibilities does not constitute an adverse employment action." *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 504 (5th Cir. 2014); *see, e.g.*, *Higbie v. Kerry*, 605 F. App'x 304, 309 (5th Cir. 2015) (finding that the reduction in responsibilities of someone in an "intermittent" or "acting" supervisory position was not an adverse employment action); *Masoodi v. Lockheed Martin Corp.*, No. CIV.A. 10-807, 2011 WL 837150, at *6 (E.D. La. Mar. 3, 2011) (finding that being not named as a temporary manager, when there was no competitive process or pay increase or other tangible benefit, is not an adverse employment action).

UPS argues that Hackett did not even establish that he was an Acting Manager. Dkt. 15 at 20–21 (citing Dkt. 15, Ex. 1 at 29). Rather, UPS argues that Hackett assumed he held the position

because sometime in summer of 2013, Lester told him that he was "in charge" in Miller's absence. *Id.,* Ex. 1 at 29. UPS also argues that filling in for a temporarily absent manager would have been part of Hackett's normal job duties and not a promotion in responsibilities. *Id.,* Ex. 3. UPS offers evidence that Hackett did not receive a pay raise or a new title in association with the time he filled in for Miller. *Id.* Finally, UPS offers evidence that Hackett did not assume all of Miller's responsibilites—he was not involved in evaluating employees or addressing performance or operational issues, which would be included in the Business or Acting Manager responsibilities. Dkt. 15 at 21 (citing Ex. 1 at 29–30; Ex. 3). Hackett's response is that while he was in charge that he had managerial duties that he was "stripped of" when he was replaced by Ribelin. Dkt. 17 at 7.

When the evidence is viewed in the light most favorable to Hackett, the court accepts that he was temporarily assigned at least some Acting Manager duties when Lester placed him "in charge," and he lost those responsibilities when Ribelin was assigned to fill the position. However, the court need not reach a conclusion on whether this rises to a level of a material reduction in responsibilities, because Hackett has not offered evidence that demonstrates that UPS's reason for replacing him with Ribelin was pretext under the burden-shifting framework.

Second, the burden-shifting analysis requires UPS to produce a legitimate, non-discriminatory reason for its adverse employment decision. UPS argues that it had a legitimate non-discriminatory reason for replacing Hackett with Ribelin—Ribelin already had experience as a Business Manager between 2003 and 2013 and was experienced with the peak season rush. Dkt. 15 at 22. UPS's burden is one of production, not one of persuasion. *McCoy*, 492 F.3d at 557.

Finally, because UPS has produced a legitimate non-discriminatory reason, the burden turns to Hackett to offer evidence to demonstrate UPS's reason was mere pretext. *Id.* Hackett must present "sufficient evidence to find that the employer's asserted justification is false." *Reeves*, 530 U.S. at

148–49. "A mere scintilla of evidence of pretext does not create an issue of material fact in all cases." *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 301 (5th Cir. 2000).

Hackett's only argument in support of pretext is that he was qualified to fill the Acting Manager role, and therefore UPS's reasons for replacing him must be false. Dkt. 17 at 12–13. Hackett argues that he has a Bachelor's degree, some graduate work, and holds some course certificates. Dkt. 17-3 at 6–7. Further, he argues that he has experience with peak season in his other roles at UPS. Dkt. 17 at 13. But, Hackett does not explain why he is even as qualified as Ribelin who had already worked peak seasons at the Business Manager level. *Id*. Here, Hackett's burden to demonstrate that he is qualified for a position is part of the strength of Hackett's prima facie case; it is not sufficient to show pretext. *Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir.2010) (holding that pretext can be established by showing "the qualifications [between two candidates] are so widely disparate that no reasonable employer would have made the same decision."); *Price*, 283 F.3d at 723 ("Showing that two candidates are similarly qualified does not establish pretext."). Employment discrimination laws are "not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir. 1988). The court will not second-guess UPS's business decision to fill an Acting Manager position with an experienced Business Manager with peak season experience. Hackett is, if anything, less qualified than Ribelin. Therefore, his qualifications alone are not sufficient to rebut UPS's proffered reason for replacing him.

Further, UPS argues that it is entitled to the "same actor" inference to rebut any of Hackett's arguments of pretext. Dkt. 15 at 23. "The same actor inference creates a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue." *Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 421–22

24

(5th Cir. 2009).  Here, Hackett alleges that Lester told him he was "in charge" and placed him in the Acting Manager position.  Dkt. 15, Ex. 1 at 29.  Hackett also testified that Lester made the decision to appoint Ribelin as the Acting Manager during the peak season.  *Id*. at 30.   Hackett does not respond to UPS's "same actor" arguments.  Dkt. 17.  Therefore, the court finds that UPS is entitled to the same actor inference.

The court concludes that Hackett has not established an issue of material fact supporting pretext.  UPS's motion for summary judgment on Hackett's discrimination claim for his 2013 replacement as Acting Manager on the basis of race or national origin is GRANTED.

### c.  2014 Failure to Promote

Next,  Hackett alleges that he was subject to age discrimination when he was passed over for promotion to Baytown Center Business Manager in favor of Richards in November 2014.  Dkt. 17 at 13–14.  UPS argues that it is entitled to summary judgment on this claim because (1) Hackett has not met his burden to establish that he was qualified for a promotion to Business Manager, and (2) Hackett cannot establish that "but for" his age he would have been promoted instead of Richards. Dkt. 15 at 21–22.

First, UPS argues that Hackett did not establish his prima facie case of discrimination because he did not establish that he was qualified for the position of Business Manager.  Dkt. 15 at 25.  UPS has an corporate policy that an employee is only qualified for a promotion when his or her performance rating indicates the employee is "ready" for promotion.  Dkt. 15, Ex. 3.  At the time of promotion, Hackett's applicable Career Development Plan rated him as "still developing."  Dkt. 15, Ex. 7.  Richards's Career Development Plan rated her as "ready."  Dkt. 15, Ex. 9.

Hackett argues that the Career Development Plans were subjective, that his rating which was made by Miller was pretextual, and that Lester said he was ready for promotion.  Dkt. 17 at 5, 14

(citing Dkt. 17-3 at 39). Hackett offers no evidence in support of his conclusory allegation that Miller's rating was pretextual except that Miller once joked about Hackett's status as a deacon. Dkt. 17 at 16. Further, the Fifth Circuit allows employers to rely on subjective criteria in order to select one candidate over another. *See, e.g.*, *Martinez v. Tex. Workforce Comm'n-Civil Rights Div.*, 775 F.3d 685, 688 (5th Cir. 2014); *Alvarado v. Tex. Rangers*, 492 F.3d 605, 616 (5th Cir. 2007). The court concludes that Hackett failed to establish his prima facie case of discrimination because he did not make a showing that he was qualified for the position.

Out of an abundance of caution, the court will also briefly address UPS's second argument that Hackett did not establish that "but for" his age he would have been promoted. Dkt. 15 at 25–26. "A plaintiff bringing an ADEA claim must prove, by a preponderance of the evidence, that age was the but-for cause of the challenged adverse employment action." *Moss*, 610 F.3d at 928. A showing that the unsuccessful candidate was "clearly better qualified" can serve to prove the employer's proffered reason for selecting the younger candidate was pre-textual. *Id.* at 922.

Hackett argues, again, that his qualifications—his thirty years of service with UPS, his bachelor's degree, his graduate course work placing him "six classes shy of an MBA," and other certificates demonstrate that he was qualified to be Business Manager. Dkt. 17 at 17. He argues that because he has thirty years of experience and Richards has thirteen years with UPS, he was more qualified. Dkt. 17 at 14. Though the Fifth Circuit recognizes that work experience is one component of an employee's qualifications, it squarely rejects any "attempt to equate years served with superior qualifications." *Moss*, 610 F.3d at 923 (quoting *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996)). The Fifth Circuit has upheld an employer's discretion in promotion decisions and has held that "an employee's 'better education, work experience, and longer tenure with the company do not establish that he is clearly better qualified.'" *Martinez*, 775 F.3d at 688 (quoting *Price*, 283

F.3d at 723).  Rather,"the qualifications [must be] so widely disparate that no reasonable employer would have made the same decision."  *Moss*, 610 F.3d at 923.

Here, Hackett offers no other evidence that he is more qualified than Richards except for his additional years of experience.  Dkt. 17.  Both Richards and Hackett were supervisors at the time they applied for a Business Manager position.  Dkt. 15, Exs. 2, 8.  Further, Hackett attempts to argue that he trained Richards, raising the presumption that she was less qualified.  Dkt. 17 at 14.  However, Hackett testified that he only performed a minimal amount of training, specifically that he trained Richards in "claims," briefly, over a decade prior.  Dkt. 15, Ex. 1 at 25.  Unlike Hackett, Richards already earned her MBA.  Dkt. 15, Ex. 8.

The court concludes that Hackett failed to raise a dispute of material fact over whether "but for" his age he would have been promoted instead of Richards or even that he was so clearly better qualified than Richards that he should have been promoted instead.

Because Hackett could not establish his prima facie case or provide evidence of "but for" causation, UPS's motion for summary judgment on Hackett's age discrimination claim is GRANTED.

### 4.    Retaliation

Hackett alleges that (1) he was demoted in November 2013 because of retaliation for his Human Resources complaints and (2) he was passed over for a promotion in November 2014 because of his EEOC complaint.  Dkt. 17 at 15.  UPS argues that it is entitled to summary judgment on Hackett's retaliation claims because Hackett failed to establish his prima facie case.  Dkt. 15 at 27–29.

### a.  Legal Standard

Anti-retaliation provisions protect plaintiffs who "'opposed' a practice that Title VII forbids or [have] 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding,

27

or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59, 126 S. Ct. 2405 (2006) (quoting 42 U.S.C. § 2000e-3(a)). Retaliation complaints are also actionable under section 1981. *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 339 (5th Cir. 2003). Likewise, the ADEA "prohibits an employer from discriminating against an employee 'because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [ADEA].'" *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 374 (5th Cir. 2008) (quoting 29 U.S.C. § 623(d)).

To establish a prima facie case for retaliation, a plaintiff must present evidence that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497 (5th Cir. 2015) (ADEA); *Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (Title VII and 1981).

If the plaintiff makes a prima facie showing of retaliation, the burden of production shifts to the employer, which must "articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). "If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. . . . To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." *Id*.

### b. 2013 Demotion

First, Hackett alleges that he was being retaliated against for his reports against employees in the Security Department when he was removed from his position as an Acting Manager and replaced by Ribelin in November 2013. Dkt. 17 at 16. Hackett argues that his late 2012 report to Human

Resources regarding Moss's reading of the Bible verse is protected activity. Dkt. 15, Ex. 1 at 8; Dkt. 17 at 16.

UPS argues that the Human Resources report about Moss was too remote in time to establish a causal link to his removal from the Acting Manager position. "Although this lapse of time is, by itself, insufficient to prove there was no retaliation . . . [it may] suggest[] that a retaliatory motive was highly unlikely." *Grizzle v. Travelers Health Network, Inc*., 14 F.3d 261, 268 (5th Cir. 1994); *see, e.g.*, *Gibson v. Verizon Servs. Org., Inc.*, 498 F. App'x 391, 397 (5th Cir. 2012) ("Seven months is too long to support an inference of a causal link, without additional evidence."); *Ameen v. Merch & Co., Inc*., 226 F. App'x 363, 376 (5th Cir. 2007) ("The timing of [the plaintiff's] termination, eleven months after she allegedly complained to [her supervisor], casts significant doubt on the claim that her termination was in retaliation for that complaint."); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471–72 (5th Cir.2002) (finding a period of five months between the protected activity and the adverse action, standing alone, insufficient to infer retaliation).

Hackett directs the court to the *Lopez v. Donahoe* decision in support of his argument for retaliation despite the eleven-month time span between his complaint about Moss and his alleged demotion from the Acting Manager position. Dkt. 17 at 17 (citing *Lopez v. Donahoe*, 94 F. Supp. 3d 845, 862 (S.D. Tex. 2015) (Tagle, J.)). In the *Lopez* case, there was an eight-month time span between the protected activity and the adverse employment action. *Id*. However, the court found that retaliation could be inferred because the employee was harassed throughout the eight-month period and because the employer departed from its usual policies and practices in initiating the employee's suspension. *Id*. (citing *Feist v. La. Dep't of Justice, Office of the Atty. Gen*., 730 F.3d 450, 455 (5th Cir. 2013)).

None of the factors that the *Lopez* court relied on are applicable here. UPS argues it was actually following its policies and practices when it promoted Richards over Hackett because Richards had the required "ready" rating. Dkt. 18 at 6. Further, Hackett did not provide any evidence that he experienced harassment during the period between his report to Human Resources regarding Moss and his removal from the Acting Manager position other than Miller's comment about Hackett's status as a deacon. Dkt. 17 at 16–17; Dkt. 15, Ex. 1 at 28–29. To the contrary, during this immediate time period following the report to Human Resources, Hackett himself argues that UPS increased his responsibility to the temporary Acting Manager level. Dkt. 15, Ex. 1 at 29.

The court agrees with UPS—Hackett does not offer any evidence that establishes the required causal link between his Human Resources complaint about Moss and his removal from the Acting Manager position. UPS's motion for summary judgment on Hackett's retaliation claim for his 2013 demotion is GRANTED.

### c. 2014 Failure to Promote

Second, Hackett alleges that he was being retaliated against for his EEOC complaint when Richards was promoted over him in November 2014. Dkt. 17 at 17–18. Hackett made his EEOC complaint on February 27, 2014. Dkt. 15, Ex. 6. Eight months later, in November 2014, Hackett was passed over for promotion. Hackett argues that during that time, his colleague Tutt was encouraging other coworkers to take pictures of him sleeping on the job. Dkt. 17 at 18. However, even Hackett testified that Tutt's behavior was likely in retaliation for a demotion investigation in 2005 or 2006 and had nothing to do with Hackett's EEOC complaint. Dkt. 17-3 at 23. Hackett does not offer any additional evidence connecting his EEOC complaint to UPS's selection of Richards over him for

promotion.[7] Dkt. 17. Without any additional evidence, the court does not find a causal link when there is an eight month lapse of time between the protected activity and the adverse employment action. *Gibson v. Verizon Servs. Org., Inc.*, 498 F. App'x 391, 397 (5th Cir. 2012).

Because Hackett failed to establish a causal link between the EEOC complaint and the adverse employment actions, UPS's motion for summary judgment on Hackett's retaliation claim for the 2014 denial of promotion is GRANTED.

## IV. MOTION FOR LEAVE TO AMEND

Hackett moves to amend his complaint to include a new cause of action for retaliation based on allegations of mistreatment by his current supervisor, Spring Williams. Dkt. 24. Hackett alleges that Williams threatened to fire Hackett, to take away his retirement and pension, questioned how he would testify in front of court, and yelled at him in front of co-workers in retaliation for his present lawsuit. *Id*. Hackett alleges that the harassment began after UPS submitted its motion for summary judgment. Dkt. 24. Hackett's proposed second amended complaint alleges a new cause of action for retaliation and a hostile work environment. Dkt. 24 at 2.

Because Hackett is seeking leave to amend outside of the time permitted in the court's scheduling order, the court treats the motion to file an amended complaint as a motion to amend the scheduling order. Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order may be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "To show good cause, the party seeking to modify the scheduling order has the burden of showing 'that the

---

[7] Hackett alleges that Richards yelling at him and asking him for undeserved write-ups is also evidence of retaliation. Dkt. 17 at 18 (Dkt. 17-3 at 24). However, that evidence describes Richards's conduct *after* she was promoted over him. Dkt. 17-13 at 24. The court does not see how Richards's alleged conduct after she was promoted over Hackett is evidence of a causal connection between the EEOC complaint and UPS's failure to promote Hackett. Moreover, Hackett does not allege a separate retaliation claim based on Richards's admonitions. *McElroy*, 622 F. App'x at 390 ("Verbal threats do not rise to the level of an adverse employment action.").

deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015) (quoting *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013)). To determine if there is good cause, the court must consider: "(1) the explanation for the failure to timely [comply with the scheduling order]; (2) the importance of the [modification]; (3) potential prejudice in allowing the [modification]; and (4) the availability of a continuance to cure such prejudice." *Id.* (quoting *Meux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010))".

The Rule 16(b) standard is a "good cause standard, rather than [the] 'freely given' standard of Rule 15(a)" that applies inside the deadlines set in the scheduling order. *Escobar v. City of Hous.*, No. CIV.A. 04-1945, 2007 WL 471003, at *1 (S.D. Tex. Feb. 11, 2007) (Rosenthal, J.) (collecting cases). Only once the movant establishes good cause will the court then consider whether to grant leave to amend the complaint under Rule 15(a). *Id.* Even under Rule 15(a), granting leave to amend is within the sound discretion of the district court, and leave may be denied if the court has good reason; a district court may consider undue delay, undue prejudice to the opposing party, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003); *Self v. Quinn's Rental Servs. (USA), LLC*, No. CV H-15-1569, 2016 WL 6835093, at *1 (S.D. Tex. Nov. 21, 2016).

Here, Hackett made his motion for leave to file a second amended complaint on July 25, 2017, just days before docket call was originally scheduled in this matter. Dkt. 22. The amended pleading deadline was October 28, 2016, the discovery deadline was February 23, 2016, and the dispositive motion deadline was March 23, 2017. Dkt. 11. Hackett argues that his amendment is necessarily late in the litigation process because it adds allegations based on events that occurred between April and June of this year. Dkt. 23 at 2. UPS argues that Hackett's motion is dilatory because the alleged bad

behavior began in April, but he waited until the end of July before filing his motion to amend. Dkt. 25 at 4.

First, the court considers Hackett's explanation for his failure to follow the scheduling order. Hackett's proposed amendment alleges events that occurred after the scheduling order deadlines. The court finds that Hackett's explanation, to that extent, is reasonable. However, given how close the case was to trial, the court agrees with UPS that Hackett could have raised some of the issues in April or May rather than waiting until the end of July. *See Hypes ex rel. Hypes v. First Commerce Corp.*, 134 F.3d 721, 728 (5th Cir.1998) ("[A] district court does not abuse its discretion by refusing to allow an eleventh-hour amendment."). The court finds that Hackett's explanation for the delay is not sufficient to establish good cause to amend his complaint.

Second, the court considers the potential importance of the modification. Hackett's allegations of mistreatment, should they prove true, are troubling. Dkt. 24, Ex. 1 (Hackett Aff.) at 5–8. UPS argues, though, that the new allegations are remote in time from his existing causes of action. Dkt. 25 at 5. The court disagrees with UPS. Though the EEOC complaint was initiated in 2014, Hackett alleges ongoing harassment by Richards in 2015, and the present litigation is an ongoing matter. However, the court is concerned with whether the events alleged by Hackett are sufficient to even state a prima facie case for retaliation or harassment—UPS argues that Hackett's proposed amendment does not include an actual adverse employment action. Dkt. 25 at 10; *McElroy*, 622 F. App'x at 390 (holding that verbal threats of firing, alone, are usually not sufficient); *Thompson*, 764 F.3d at 503 (holding that adverse employment actions only include "ultimate employment decisions such as hiring, firing, demoting, promoting, granting leave, and

compensating"). Therefore, the court finds that Hackett has not established that his amendment has the potential importance required to show good cause to amend the complaint.[8]

Finally, the court considers the prejudice associated with the amendment and availability of a continuance. The proposed amendment contains allegations that form an entirely new cause of action. Dkt. 23. UPS argues that an amendment this late in the game would re-open discovery, require depositions of new witnesses, and lead to a second motion for summary judgment. Dkt. 25 at 7. This order grants summary judgment in favor of UPS on all of Hackett's pending causes of action. Therefore, allowing Hackett to amend his complaint would keep this matter open when it is otherwise concluding, unduly prejudicing UPS and delaying the resolution of the present litigation. Further, denying the amendment is not prejudicial to Hackett. Hackett can still seek relief for his new allegations with a new EEOC claim. Dkt. 25 at 5–6. Therefore, the court finds that the potential for delay and prejudice against UPS weigh heavily against granting Hackett leave to amend.

The court concludes that Hackett has not demonstrated good cause to file a second amended complaint. Therefore, Hackett's motion for leave to file a second amended complaint (Dkt. 24) is DENIED.

---

[8]The same rationale is applicable to a Rule 15(a) analysis, in which a court may deny an amendment that would be "futile." *Foman*, 371 U.S. at 182. In arguing that Hackett's amendment is futile, UPS also responds that Hackett cannot prove that his supervisor, Williams, was even aware that Hackett had engaged in a protected activity. Dkt. 25, Ex. A.

### V. CONCLUSION

UPS's objections (Dkt. 19) to Hackett's summary judgment evidence is SUSTAINED IN PART and OVERRULED IN PART as stated herein.

UPS's motion for summary judgment (Dkt. 15) is GRANTED. Hackett's claims against UPS are DISMISSED WITH PREJUDICE.

Hackett's motion for leave to file a second amended complaint (Dkt. 24) is DENIED.

It is so ORDERED.

Signed at Houston, Texas on August 17, 2016.

_____
Gray H. Miller
United States District Judge